No. 22-55898

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LAUREN SOUTER, INDIVIDUALLY, AND ON BEHALF OF OTHERS
SIMILARLY SITUATED,

*Plaintiff-Appellant,*

v.

EDGEWELL PERSONAL CARE COMPANY; EDGEWELL PERSONAL CARE BRANDS, LLC;
AND EDGEWELL PERSONAL CARE, LLC,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of California
No. 3:20-cv-01486
Hon. Todd. W. Robinson

## APPELLEE'S ANSWERING BRIEF

John W. Moticka
STINSON LLP
7700 Forsyth Boulevard, Ste. 1100
St. Louis, MO 63105
Telephone: 314.259.4562
john.moticka@stinson.com

Megan McCurdy
J. Emmett Logan
STINSON LLP
1201 Walnut Street, Ste. 2900
Kansas City, MO 64106
Telephone: 816.842.8600
megan.mccurdy@stinson.com
emmett.logan@stinson.com

*Attorneys for Appellees Edgewell Personal Care
Company, Edgewell Personal Care Brands, LLC,
and Edgewell Personal Care, LLC*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants make the following corporate disclosures:

Defendant Edgewell Personal Care Company states that it does not have a parent corporation. The Vanguard Group, Inc. and Blackrock, Inc. own more than ten percent (10%) of Edgewell Personal Care Company's stock.

Defendant Edgewell Personal Care Brands, LLC states that its sole member is Edgewell Personal Care Company.

Defendant Edgewell Personal Care, LLC states that its sole member is Playtex Products, LLC.

Date: February 22, 2023

Stinson LLP

s/ *Megan McCurdy*

Megan McCurdy

*Attorney for Appellees Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, and Edgewell Personal Care, LLC*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................... i

TABLE OF CONTENTS .................................................................. i

TABLE OF AUTHORITIES .............................................................. iii

INTRODUCTION ...........................................................................1

JURISDICTIONAL STATEMENT ....................................................4

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........5

STATEMENT OF THE CASE .........................................................5

    I.   The Kill Claim .................................................................6

    II.  The Hypoallergenic Claim ...............................................9

SUMMARY OF ARGUMENT .......................................................11

ARGUMENT ...............................................................................14

    I.   STANDARDS OF REVIEW ..............................................14

        A.  Appellate Standard of Review ......................................14

        B.  Pleading Standard .......................................................14

        C.  The District Court Correctly Applied the Reasonable Consumer
        Standard. .......................................................................16

    II.  THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF'S
    CLAIMS BASED ON THE KILL CLAIM WERE IMPLAUSIBLE AS A
    MATTER OF LAW. ..........................................................21

        A.  The District Court Correctly Held That a Reasonable Consumer Would
        Not Interpret a Hand Wipe Kill Claim to Apply to All Germs in Existence. ...
        …………………………………………………………………… 22

           1.  The Front Label Alone Sustains the District Court's Common Sense
           Definition of the Subset of Germs to Which the 99.99% Kill Claim
           Applies ....................................................................24

           2.  The Back Label is Not Misleading but Supports the District Court's
           Common Sense Definition of the Subset of Germs to Which the 99.99%
           Kill Claim Applies. ....................................................27

           3.  A Reasonable Consumer Would Not Conclude that a Product Is
           Capable of Performing the Impossible ........................33

           4.  Plaintiff's Effort to Distinguish *Trader Joe's* Should Be Rejected. ...35

B.   Plaintiff Fails to Plausibly Allege Facts That Support the Allegation That the Kill Claim Violates the Reasonable Consumer Standard. ..............36

1.   Plaintiff's Allegations about Specific Germs Fail to Establish a Plausible Theory of Deception. ................................................................37

2.   The Second Amended Complaint Includes No Allegation that Would Enable a Determination of what Percentage of the Applicable Subset Is Comprised of Any Germs that the Products Do Not Kill. .........................43

C.   The District Court Did Not Impute to Reasonable Consumers Scientific Knowledge of Germ Properties. ...................................................................44

III.  THE DISTRICT COURT CORRECTLY CONCLUDED THAT A REASONABLE CONSUMER WOULD INTERPRET THE "HYPOALLEGRENIC" CLAIM TO MEAN THAT THE PRODUCTS ARE LESS LIKELY THAN COMPARABLE PRODUCTS TO CAUSE ALLERGIC REACTIONS. ...........................................................................46

A.   The Studies on Which Plaintiff Relies Do Not Show that the Products Are Not Hypoallergenic. ................................................................................47

B.   The Cases on Which Plaintiff Relies Do Not Support Her Hypoallergenic Claim. ..................................................................................51

CONCLUSION ........................................................................................................53

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Andrade-Heymsfield v. Danone US, Inc.*,
No. 19-cv-589-CAB-WVG, 2019 WL 3817948 (S.D. Cal. Aug. 14,
2019), *app. dismissed*, 2020 WL 5513552 (9th Cir. Aug. 13, 2020) ................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 14, 15

*Bank of the West v. Super. Ct.*,
2 Cal. 4th 1254 (1992) ......................................................................................16

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) .........................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................... 15

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ........................................................................... 20

*Brady v. Bayer Corp.*,
26 Cal. App. 5th 1156 (2018), 26 Cal. App. 5th ............................................. 20

*Brown v. Kellogg Sales Co.*,
1:20-cv-7283-ALC, 2022 WL 992627 (S.D.N.Y. Mar. 31, 2022).................... 33

*Bush v. Rust-Oleum Corp.*,
2021 WL 24842 (N.D. Cal. 2021) .................................................................... 31

*Catholdi-Jankowski, v. CVS Health Corp.*,
No. 6:2 2023 WL 2028926 (W.D.N.Y. Feb. 16, 2023)...................12, 22, 23, 32

*Chuang v. Dr. Pepper Snapple Group, Inc.*,
No. 17-01875-MWF, 2017 WL 4286577 (C.D. Cal. Sept. 20,
2017) ................................................................................................................. 33

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2009) ......................................................................... 18

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) .................................................3, 16, 17, 19, 28, 30

*Forouzesh v. Starbucks Corp.*,
   714 Fed. App'x. 776 (9th Cir. 2018) ................................................. 19

*Freeman v. Time*,
   68 F.3d 285 (9th Cir. 1995) .........................................................18, 33

*Hawkins v. Coca Cola Co.*,
   No. 21-cv-8788 (KMK), 2023 WL 1821944 (S.D.N.Y Feb. 7,
   2023) ...................................................................................................50

*Hill v. Roll Int'l. Corp.*
   195 Cal.App.4th 1295 (2011) ..........................................................21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .........................................................15

*Kellman v. Whole Foods Mkt., Inc.*,
   313 F. Supp. 3d 1031 (N.D. Cal. 2018) ......................................51, 52

*Khoja v. Orexigen Therapeutics, Inc.*
   899 F.3d 988 (9th Cir. 2018) ...............................................40, 48, 49

*Lavie v. Procter & Gamble Co.*,
   105 Cal.App.4th 496 (2003), 105 Cal.App.4th 508 .....................17, 18

*Macormic v. Vi-Jon, LLC*,
   No. 4:20-cv-1267-HEA, 2021 WL 6119166 (E.D. Mo. Aug. 6,
   2021), 2023 WL 1100378 ..................................................................23

*McKinniss v. Sunny Delight Beverages Co.*,
   No. CV 07-02034-RGK, 2007 WL 4766525 (C.D. Cal. Sept. 4,
   2007) ................................................................................................. 15

*Mier v. CVS Pharmacy, Inc.*,
   No. 20-cv-01979-DOC-ADS, 2021 WL 1559367 (C.D. Cal. March
   22, 2021) .......................................................................................23, 31

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ......................................................19,

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ........................................................ *Passim*

*Moreno v. Vi-Jon, LLC*,
2021 WL 807683 (S.D. Cal. 2021) *rev'd on other grounds*, 2022
WL 17668457 (9th Cir. 2022) ............................................21, 23, 27

*Moreno v. Vi-Jon, LLC*,
No. 21-56370, 2022 WL 17668457 (9th Cir. 2022)....................26, 27

*Piescik v. CVS Pharmacy, Inc.*,
576 F.Supp. 3d. 1125 (S.D. Fla. 2021)...........................12, 22, 23, 25

*Puri v. Costco Wholesale Corp.*,
No. 5:21-cv-01202-EJD, 2021 WL 6000078 (N.D. Cal. Dec. 20,
2021) ...............................................................................................33

*Red v. Kraft Foods, Inc.*,
No. CV 10-1-28-GW(AGRx), 2012 WL 5504011 (C.D. Cal. Oct.
25, 2012) ...................................................................................14, 21

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) ....................................................30 31,

*Robles v. Gojo Industries, Inc.*,
No. 21-cv-928 JVS, 2022 WL 2163846 (C.D. Cal. 2022) .........24, 25, 28, 32, 34

*Rugg v. Johnson & Johnson*,
No. 17-cv-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18,
2018) .........................................................................................47, 51

*Salazar v. Walmart, Inc.*,
83 Cal. App. 5th 561, 567 (2022) ....................................................20

*Sebastian v. Kimberly-Clark Corp.*,
No. 17-cv-442-WQH-JMA, 2017 WL 6497675 (S.D. Cal. Dec. 18,
2017) .........................................................................................51, 52

*Semegen v. Weidner*,
780 F.2d 727 (9th Cir. 1985) ...........................................................16

*Stuart v. Cadbury Adams USA, LLC*,
458 Fed. App'x 689 (9th Cir. Nov. 21, 2011) ...................................19

*Varela v. Wal-Mart, Inc.*,
No. 20-4448-GW-KSx, 2021 WL 2172827 (C.D. Cal. May 25,
2021) .................................................................................................................33

*Videtto v. Kellogg USA*,
No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086 (E.D. Cal.
May 21, 2009).....................................................................................................20

*Werbel v. Pepsico, Inc.*,
No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2,
2010) .................................................................................................................20

*Williams v. Gerber Prod. Co.*,
552 F.3d 934 (9th Cir. 2008) ...............................................................21, 29, 30

*Workman v. Plum*,
141 F.Supp. 3d 1032 (N.D. Cal. 2015)...............................................................32

## Other Authorities

Federal Rule of Civil Procedure 8(a)(2) ...................................................................15

Federal Rule of Civil Procedure 9(b).................................................................2, 15

Federal Rule of Civil Procedure 12(b)(6).......................................................14, 22

**INTRODUCTION**

Courts have concluded repeatedly that reasonable consumers would not interpret a claim that hand disinfectants kill "99.99% of germs" applies to all germs in existence. In line with those decisions, the district court properly used its common sense to hold, as a matter of law, that it is implausible that a significant portion of the consuming public would believe that hand wipes would kill chlamydiae and HPV, which are typically transmitted through sexual contact, toxoplasmosis, which is found in cat feces, norovirus, a food-borne illness, and cryptosporidium, which Plaintiff alleges can "survive for many days in chlorinated water in pools and on surfaces disinfected with chlorine bleach." ER-024, 026, 029-030: SAC ¶¶ 48, 58, 83, 85.

Recognizing that Plaintiff simply relied on a list of all germs in existence against which the active ingredient in the Product—not the Product itself—is allegedly less effective, the district court concluded: "[a] reasonable consumer would not purchase Wet Ones to prevent diseases that would not be preventable by ensuring that their hands are clean" or "in anticipation of combating a small population of viruses, not well known as diseases transmissible by hand, and not alleged to comprise more than 0.01% of germs." ER-129. Rather than heed the district court's common sense conclusion, Plaintiff again failed to plausibly allege facts that establish that each of the germs on her list are commonly found on hands

and cause diseases that one can prevent by keeping one's hands clean.  ER-025-027, 030: SAC ¶¶ 48, 58-61, 67, 84-87.  Furthermore, Plaintiff failed to plausibly allege that the Products do not actually kill several of the germs on the list.

Similarly, Plaintiff's theory of deception regarding the "hypoallergenic" representation on the product fails to satisfy the reasonable consumer standard.  It is implausible that a significant portion of the consuming public would understand "hypoallergenic" to mean that the Products are entirely free of ingredients that could possibly cause irritation.  The district court properly used its common sense to conclude that a reasonable consumer would interpret "hypoallergenic" to relate to "the effect of the product rather than the chemical composition of the product" and, therefore, to mean that the Products are not more likely than similar products "to cause an allergic reaction, regardless of the actual composition of ingredients." ER-170.

In assessing the plausibility of a fraud claim, precision matters.  Fed. R. Civ. P. 9(b).  Precision especially matters where the district court has repeatedly provided precise directions on what must be alleged to sustain the complaint. Given this procedural history, there can be only one explanation for why Plaintiff's third attempt to state a claim still dances around the critical allegations: there is no factual basis to make the allegations required by the district court and necessary to meet the reasonable consumer standard.

Contrary to well-settled law that courts may "conclude as a matter of law that members of the public are not likely to be deceived by an advertisement," Plaintiff asks this Court to check its common sense at the door and reverse dismissal of this meritless suit. *See e.g., Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). This Court should affirm the district court's ruling dismissing this case with prejudice.

## JURISDICTIONAL STATEMENT

Defendants do not agree that the district court had subject matter jurisdiction over this action. First, Plaintiff will not be able to prove that she has suffered an injury in fact that is fairly traceable to the challenged conduct of defendants and is redressable by a favorable judicial decision. Second, Plaintiff's claims are preempted by federal law and are subject to the primary jurisdiction of the Food and Drug Administration. Defendants do not challenge here the district court's decision that the Second Amended Complaint sufficiently alleged federal subject matter jurisdiction. Defendants agree with the remainder of Plaintiff's Jurisdictional Statement.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did the district court correctly conclude that the Second Amended Complaint does not plausibly allege facts to show that a significant portion of the consuming public would be misled by an antibacterial hand wipe label that states that the hand wipe "kills 99.99% of germs"?

2.      Did the district court correctly conclude that the Second Amended Complaint does not plausibly allege facts to show that a significant portion of the consuming public would be misled by an antibacterial hand wipe label that states that the hand wipe is "hypoallergenic" and "gentle"?

## STATEMENT OF THE CASE

Plaintiff alleges that Defendants[1] manufacture and sell Wet Ones® Antibacterial Hand Wipes with the active ingredient benzalkonium chloride ("BAC") (the "Products").  ER-021.  Plaintiff alleges that she relied on the front label that states: "Kills 99.99% of Germs" (the "Kill Claim") and "Hypoallergenic".  ER-018, 023, 035: SAC ¶¶ 2, 40, 123; SER-270: Massa Declaration.  Plaintiff also alleges that she relied on the back label of the Product, which states:

> Wet Ones® Antibacterial Hand Wipes kill 99.99% of germs and wipe away dirt, providing a better clean than hand sanitizers.  They are specially formulated to be tough on dirt and germs, yet gentle on skin,

_____

[1] Not all Defendants are involved in the manufacture and sale of the Products. Defendants reserve the right to challenge, if necessary, the real party in interest.

so you can confidently keep your hands fresh and clean when soap and
water are not available.

ER-022: SAC ¶¶ 35, 41 (the hypoallergenic claims constitute the "Hypoallergenic

Claim").  SER-270: Massa Declaration.  Plaintiff alleges that both the front and

back labels are false and misleading.  ER-023-24, 030: SAC ¶¶ 35, 41, 43, 44, 87.

Each of Plaintiff's three complaints alleged that the Kill Claim is deceptive

because the Products are ineffective against certain types of germs.  ER-022: SAC

¶ 31; SER-037: FAC ¶ 29; SER-004: Complaint ¶ 27.  But none of the complaints

alleged facts to support the conclusion that a reasonable consumer would expect

hand wipes to kill those germs.  The complaints alleged that the Hypoallergenic

Claim is deceptive because the Products contain ingredients that are skin irritants.

ER-032: SAC ¶ 102; SER-046: FAC ¶ 85; SER-015: Complaint ¶ 63.  But they did

not allege that the Products irritate the skin or that the Products are more likely to

cause allergic reactions than similar products.  Defendants moved to dismiss each

complaint.  The district court granted each motion, twice granting Plaintiff leave to

amend.  ER-135, 153.

## I.   THE KILL CLAIM

**Original Complaint.**  In dismissing Plaintiff's Original Complaint, the

district court held that "Plaintiff has not set forth a plausible theory under the

reasonable consumer test" because "[n]o reasonable consumer would believe that a

hand wipe advertised to kill 99.99 percent of germs would be effective against the

bacteria and viruses that Plaintiff names." ER-144. For example, the district court found it "implausible that a reasonable consumer would believe that a hand wipe would be effective against polio, a virus that has not had an active case in the United States since 1979," "HPV, a sexually transmitted disease, [and] the norovirus and polyomavirus, which are food-borne illnesses." ER-145. The district court explained that "simply listing all kinds of germs that the hand wipes cannot kill misses the mark." *Id.* The district court noted that "Plaintiff does not explain how or why a reasonable consumer would believe that a hand wipe would protect against these viruses or diseases." *Id.* Thus, relying on its common sense, the district court advised the parties that "a reasonable consumer would likely suspect that a hand wipe would be effective against bacteria often found on hands[.]" *Id.* The court further stated "what is more, the product label explicitly states that the hand wipes should be used to 'keep hands fresh and clean *when soap and water are not available*.'" *Id.* (emphasis supplied).

**First Amended Complaint.** Plaintiff failed to remedy her implausible theory of deception in her First Amended Complaint. Plaintiff alleged that the active ingredients in the Products were ineffective against the same bacteria and viruses identified in the Original Complaint. SER-009: Complaint ¶ 33; ER-025: SAC ¶ 48. Plaintiff attempted to remedy her failure to allege how or why a reasonable consumer would believe the Products would kill the listed germs by

alleging consumers used the hand wipes to disinfect surfaces. ER-126-127 (citing SER-049-054: FAC ¶¶ 114-51). But the district court used its common sense to conclude "that a reasonable consumer would not read the various references to 'hands' as meaning Wet Ones is a product to be used in disinfecting surfaces or surrounding air particles." ER-126.

The district court reviewed the small list of germs that Plaintiff alleged were transmissible by hand and noted that some of the germs "would not be prevented by washing one's hands or using hand sanitizers[.]" ER-128. "For example, Plaintiff allege[d]that Cryptosporidium is 'very difficult to kill…[and] can survive for many days in chlorinated water in pools and on surfaces disinfected with chlorine bleach." ER-129 (citing SER-043: FAC ¶ 70). Using its common sense, the district court concluded that "[a] reasonable consumer would not purchase Wet Ones to prevent diseases that would not be preventable by ensuring that their hands are clean." *Id.* The district court, therefore, dismissed again, holding that "a reasonable consumer would not buy Wet Ones in anticipation of combating a small population of viruses, not well known as diseases transmissible by hand, and not alleged to comprise more than 0.01% of germs." *Id.*

**Second Amended Complaint.** Plaintiff's Second Amended Complaint again failed to allege a plausible theory of deception. The district court pointed out that it had "previously suggested one way that Plaintiff could meet the [reasonable

consumer] standard, [was] by providing a list of the diseases that Wet Ones does not prevent, that comprise more than .01% of diseases transmissible by hand, and that are preventable by keeping ones' hands clean." ER-013. The district court noted that it "did not ask Plaintiff to provide the complex thought process of a consumer, but to provide facts to support her claim that a reasonable consumer would be misled by Defendants' Efficacy Representations." *Id.* The district court dismissed because "Plaintiff does not provide this additional information in her Second Amended Complaint, and instead is requesting to use discovery as a 'fishing expedition' to substantiate a claim for relief." *Id*.

## II.    THE HYPOALLERGENIC CLAIM

**Original Complaint**. The district court also held that the Original Complaint did not state a claim that the Hypoallergenic Claim was false, because no reasonable consumer would "take 'hypoallergenic' and 'gentle' to mean that the hand wipe is entirely free of allergens or skin irritants," that "it is completely free of ingredients that can cause an allergic reaction," or that it poses "*no possible risk of skin irritation* . . . as opposed to posing a lower risk." ER-146 (emphasis supplied by court).

**First Amended Complaint**. The First Amended Complaint continued to rely on studies of the Products' ingredients and included no allegation that the Products themselves have caused or will cause allergic reactions or are more likely

9

to cause allergic reactions than similar products.  In dismissing, therefore, the district court held:

> Establishing that Wet Ones has ingredients that may be skin sensitizers, however, is not enough to show that it is not hypoallergenic.  Plaintiff does not allege that any allergic reactions occurred after using the product or that Wet Ones have a higher likelihood of causing a reaction compared to similar products on the market.

ER-132.

**Second Amended Complaint.**  The Second Amended Complaint again alleged that, because studies have shown that Product ingredients may irritate the skin, the representation that the Products are hypoallergenic is false.  ER-033: SAC ¶¶ 106-08.  The district court, therefore, again based its decision to dismiss on the two common sense conclusions. One, a reasonable consumer would interpret "hypoallergenic" to relate to "the effect of the product rather than the chemical composition of the product[.]" ER-014.  Two, a reasonable consumer understands a hypoallergenic claim to mean "less likely to cause an allergic reaction[.]" *Id.* Here, Plaintiff focused on the chemical composition of the Product and not whether the Product is actually less likely than similar products to cause an allergic reaction.

Thus, contrary to Plaintiff's assertions, the district court's conclusions regarding the shortcomings in Plaintiff's pleadings were not a "moving target." Opening Br. at 5. Rather, in the first two dismissal orders, the court clearly

explained why Plaintiff failed to plausibly plead her case and what was needed to cure its fatal deficiencies. Because Plaintiff did not remedy her failure, the district court dismissed Plaintiff's Second Amended Complaint on the same grounds it had dismissed its two prior iterations.

## SUMMARY OF ARGUMENT

It is implausible that a significant portion of the general consuming public would be misled by the Products' label in the manner alleged by Plaintiff. Plaintiff's theory of deception—that the "kills 99.99% of germs" claim on the label is false and misleading—rests on her allegation that the active ingredient in the hand wipes fails to kill some germs. But the germs identified by Plaintiff account for all germs in existence that the product may be ineffective against, without regard to the plausibility that a reasonable consumer would expect a hand wipe to kill such germs. For example, Plaintiff identifies coccidian (which "caus[es] infection in dogs" *see* ER-025: SAC ¶ 48); norovirus (a food-borne illnesses, *see* SAC ¶ 54); chlamydiae and HPV (sexually transmitted diseases, *see* ER-025, 026: SAC ¶¶ 48, 58); pseudomonas (which allegedly cause "infections…following surgery," *see* ER-025: SAC ¶ 48); toxoplasmosis (found in cat feces *see* ER-029: SAC ¶ 83); tuberculosis (*see* ER-025: SAC ¶ 48); DNA viruses (*see* ER-025: SAC ¶ 48); and cryptosporidium (which allegedly can "survive for many days in

chlorinated water in pools and on surfaces disinfected with chlorine bleach." *see* ER-028: SAC ¶ 85).

Courts across the country have found similar lists of germs inadequate to satisfy the reasonable consumer standard. *See Robles v. Gojo Industries, Inc.*, No. 21-cv-928 JVS (DFMx), 2022 WL 2163846, at *6 (C.D. Cal. 2022); *Piescik v. CVS Pharmacy, Inc.*, 576 F.Supp. 3d. 1125, 1133 (S.D. Fla. 2021); *Catholdi-Jankowski, v. CVS Health Corp.*, No. 6:2 2023 WL 2028926 (W.D.N.Y. Feb. 16, 2023). And the Ninth Circuit recently found that such a list should be limited to germs found on hands. *See Moreno v. Vi-Jon, LLC*, No. 21-56370, 2022 WL 17668457, at *1 (9th Cir. Dec. 14, 2022).

Here, the front label of Product displays an image of a hand and states: Wet Ones® ANTIBACTERIAL ***HAND*** WIPES Tropical Splash Kills 99.99% of Germs" and "America's #1 ***Hand*** Wipe.*" SER-270:Massa Declaration (emphasis added). As the District Court found, "a reasonable consumer would not read the various references to 'hands' to mean Wet Ones are a product to be used to disinfect surfaces or surrounding air particles." ER-011. Rather, common sense dictates that hand wipes are to be used on hands and that hand wipes are used to prevent germs that are "transmissible by hand *and* that are typically prevented by ensuring one's hands are clean." ER-012 (emphasis supplied by Court). It is not plausible that reasonable consumers would use hand wipes to prevent diseases

from germs that are typically spread by eating contaminated food, by sexual contact, or by medical surgery. Nor is it plausible that a reasonable consumer would use hand wipes to kill germs that Plaintiff alleges are not even killed by bleach or chlorine.

There are an extremely large number of species of germs on Earth. A small subset of those species are commonly found on, and transmitted by, hands and typically prevented by keeping one's hands clean. Common sense dictates that a consumer who purchases a hand wipe would not be concerned with the billions of germs that are not included in that small subset. That common-sense understanding stems from the Products' name, from the hand symbol on the label, from the repeated label references to use on hands, and from the Products' reason for being.

Thus, the district court therefore correctly held that Plaintiff's theory of deception is implausible because a significant portion of the general consuming public would not purchase the Products to combat germs that are not commonly found on and transmitted by hands and that do not cause diseases that are typically prevented by keeping one's hands clean.

It is also implausible that a significant portion of the consuming public would interpret the Hypoallergenic Claim to mean that no ingredient in the Products—as opposed to the Products themselves—has caused or will cause

allergic reactions.  Instead, common sense dictates that a reasonable consumer would interpret hypoallergenic to mean that the Products are less likely to cause allergic reactions than similar products.  Those conclusions are supported by common dictionary definitions of the term and by cases that have considered similar hypoallergenic claims.

The district court therefore correctly held that Plaintiff had failed to plausibly allege that a reasonable consumer would be deceived by the hypoallergenic claim.

## ARGUMENT

### I.   STANDARDS OF REVIEW

#### A. Appellate Standard of Review

The courts of appeal review *de novo* a district court order dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021).  "Determining whether a complaint states a plausible claim for relief…[is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

#### B. Pleading Standard

The California consumer protection laws on which Plaintiff relies require her to plausibly plead that "a 'reasonable consumer' is likely to be misled by the alleged

misrepresentations." *Trader Joe's Co.*, 4 F.4th at 881. "The term 'likely' indicates that deception must be probable, not just possible." *Red v. Kraft Foods, Inc.,* No. CV 10-1-28-GW(AGRx), 2012 WL 5504011, at *2 (C.D. Cal. Oct. 25, 2012) (quoting *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK (JCx), 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007)).

Plaintiff must go beyond speculative and conclusory assertions and allege facts that are supported by relevant information. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Plaintiff's claims are grounded in fraud and therefore are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Kearns*

*v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009). Plaintiff must allege the particular circumstances of any marketing and advertising representations and "identify the who, what, when, where, and how of the misconduct charged." *Id.* at 1124 (internal quotations omitted). The circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

## C. The District Court Correctly Applied the Reasonable Consumer Standard.

The district court properly held that "[t]he reasonable consumer test requires a probability that a 'significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" ER-009 (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)) (internal quotation marks omitted). Plaintiff agrees that the reasonable consumer standard applies to each of her claims. Opening Br. at 10. But both Plaintiff and the State, in its *Amicus* Brief, argue that the reasonable consumer standard requires only an allegation that "members of the public are likely to be deceived." *Id.*; *Amicus* Br. at 3. In support, they cite *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) and *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992). Neither of those cases, however, establish a rule that a plaintiff meets her burden

by alleging that any member of the public is likely to be deceived. On the contrary, the Ninth Circuit, has held that, to meet the reasonable consumer standard:

> Plaintiffs must demonstrate "more than a mere possibility that the seller's label might conceivably be misunderstood *by some few consumers* viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a *significant portion of the general consuming public or of targeted consumers*, acting reasonably in the circumstances, could be misled."

*Trader Joe's*, 4 F.4th at 881 (quoting *Ebner v. Fresh, Inc.*,838 F.3d 958, 965 (9th Cir. 2016) and *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003)) (emphasis supplied).[2] In *Lavie*, the court also pointed out that California courts have not held that "the unreasonable expectations or perceptions of the least sophisticated consumer or most gullible consumer would be protected." 105 Cal.App.4th at 508; *see also Trader Joe's*, 4 F.4th at 881 ("[P]laintiff's unreasonable assumptions about a product's label will not suffice.").

The State also argues that "courts should dismiss consumer deception cases on the pleadings only where no reasonable consumer could be misled." *Amicus* Br. at 15. In support, it cites cases in which courts affirmed orders dismissing actions at the pleadings stage. While those cases include statements like "no reasonable

---

[2] The State eventually concedes that the reasonable consumer standard requires deception of a "significant portion of the general consuming public or of targeted consumers." *Amicus* Br. at 18-19 (quoting *Ebner*, 838 F.3d at 965).

consumer would be deceived" by the challenged representation, they do not contradict the established rule that plaintiff must plausibly allege that a significant portion of the general consuming public, acting reasonably in the circumstances, would be misled. Rather, they applied that standard and concluded that plaintiff did not come close to meeting it.

Thus, for example, in *Freeman v. Time*, 68 F.3d 285, 289 (9th Cir. 1995), the court rejected plaintiff's argument that "to demonstrate that 'members of the public are likely to be deceived' he need show only that some members of the public, such as the elderly, minors or the mentally disadvantaged, are likely to be deceived." *Id*. at 289.

In *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019), the court set forth the "significant portion of the general consuming public" standard and pointed out that the *Lavie* court had rejected "a 'least sophisticated consumer' standard." *Id*. at 1228-29.

In *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1161 (9th Cir. 2009), the court affirmed dismissal because plaintiff's interpretation of defendant's advertisement "defies common sense." *Id*. at 1162. The court added:

> Of course, it is possible that some consumers might hazard such an assumption. But "[a] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed."

*Id*. (quoting *Lavie*, 105 Cal.App.4th at 497-98).

Dismissal at the pleading stage, therefore, is appropriate where defendant's claims are not misleading to a significant portion of the general consuming public as a matter of law. *Trader Joe's*, 4 F.4th at 886; *Ebner,* 838 F.3d at 965-66; *Forouzesh v. Starbucks Corp*., 714 Fed. App'x. 776, 777 (9th Cir. 2018). Plaintiff and the State argue, however, that the district court made findings of fact in concluding that a reasonable consumer would not be concerned with whether a hand wipe kills all germs in existence, whether it kills germs that are not typically transmissible by hand, or whether it kills germs that are not controlled by soap and water. In doing so, Plaintiff and the State ignore the distinction between resolving a disputed issue of fact and reaching a conclusion of law as a matter of common sense. To ignore that distinction would result in a system under which claims of consumer deception could never be dismissed at the pleadings stage. Such a system does not prevail in the Ninth Circuit.

At the pleading stage, the determination of whether a significant portion of the consuming public is likely to be deceived is made using common sense. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020) ("[I]f common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage."); *Stuart v. Cadbury Adams USA, LLC*, 458 Fed. App'x 689, 690 (9th Cir. Nov. 21, 2011) (affirming order dismissing complaints where

plaintiff's allegations of deception "defy common sense."); *Andrade-Heymsfield v. Danone US, Inc.*, No. 19-cv-589-CAB-WVG, 2019 WL 3817948, at *8 (S.D. Cal. Aug. 14, 2019), *app. dismissed*, 2020 WL 5513552 (9th Cir. Aug. 13, 2020) (complaint dismissed based on conclusion that "[c]ommon sense dictates" that reasonable consumers would not be deceived by the product's label[.]").

Plaintiff therefore recognizes that where "a claim runs contrary to common sense" it should be dismissed. Opening Br. at 11-12; *see also* Amicus Br. at 16 (a claim that "runs counter to ordinary common sense or the obvious nature of the product…is fit for disposition at the pleading stage.") (internal citations omitted). Still, Plaintiff and the State repeatedly cite *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 475 (7th Cir. 2020), *Salazar v. Walmart, Inc.*, 83 Cal. App. 5th 561, 567 (2022), and *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018) in support of their arguments that only rarely should cases be dismissed at the pleadings stage. Yet none of those cases contradicts the principle that a case should be dismissed where common sense would not lead a reasonable consumer to be misled by the alleged misrepresentation. The *Brady* court, moreover, described cases that establish the "theme" that if "a claim of misleading labeling runs counter to ordinary common sense or the obvious nature of the product, the claim is fit for disposition at the demurrer stage of the litigation." 26 Cal. App. 5th at 1165-66; *see Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2,

2010) ("where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate"); *Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086, at *4 (E.D. Cal. May 21, 2009) (dismissing complaint because "survival of the instant claim would require this Court to ignore all concepts of personal responsibility and common sense"); *Kraft Foods,* 2012 WL 5504011, at *3 ("a number of courts have dismissed UCL claims as a matter of law post-*Williams,* especially where,…the claim alleges that a consumer will read a true statement on a package and will then disregard 'well-known facts of life' and assume things about the products *other than* what the statement actually says.") (emphasis supplied by the court); *Hill v. Roll Int'l. Corp.* 195 Cal.App.4th 1295, 1301 (2011) ("a demurrer must be sustained when the assumed facts show lack of a valid claim").

## II. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF'S CLAIMS BASED ON THE KILL CLAIM WERE IMPLAUSIBLE AS A MATTER OF LAW.

The district court correctly held that Plaintiff failed to allege a plausible theory of deception to satisfy the reasonable consumer standard. Plaintiff failed to plausibly allege facts to show that a significant portion of the consuming public would be misled by an antibacterial hand wipe label that states that the hand wipe kills 99.99% of germs.

**A. The District Court Correctly Held That a Reasonable Consumer Would Not Interpret a Hand Wipe Kill Claim to Apply to All Germs in Existence.**

It is implausible that a significant portion of the consuming public would understand the Kill Claim to apply to all germs in existence. In *Moreno*, the Ninth Circuit understood that the district court had dismissed plaintiff's action based on its conclusion that the complaint alleged that a 99.99% kill claim on hand-sanitizer applied to "all germs." Plaintiff, however, argued that his "complaint could be amended to refer to germs commonly found on hands." *Id.* The Ninth Circuit remanded, not because it disagreed that a reasonable consumer would not interpret the kill claim to apply to all germs, but because "[b]oth parties agreed at oral argument that the 12(b)(6) analysis would be different under" allegations that limit the kill claim to a subset of germs. *Id.* at *1-2.

In *Robles v. Gojo Industries, Inc.*, No. 21-cv-928 JVS (DFMx), 2022 WL 2163846, at *6 (C.D. Cal. 2022), *Piescik v. CVS Pharmacy, Inc.*, 576 F.Supp. 3d. 1125, 1133 (S.D. Fla. 2021), and *Catholdi-Jankowski, v. CVS Health Corp.*, No. 6:22-cv-06227-EAW, 2023 WL 2028926 (W.D.N.Y. Feb. 16, 2023) the courts also held that a reasonable consumer would not interpret a 99.99% kill claim to apply to all germs in existence. In *Piescik*, the court stated:

> It defies all logic to assume that a reasonable consumer who purchases hand sanitizer will also expect it to offer protection against illnesses most commonly spread by drinking contaminated water, sexual contact, or by "taking high doses of antibiotics…in a healthcare setting."

*576 F.Supp. 3d. at 1133.* In *Robles*, the court quoted language in support of its conclusion that it was implausible to expect that hand sanitizer would kill 99.99% of germs that exist on Earth. 2022 WL 2163846, at *5. *Catholdi-Jankowski* held:

> This Court agrees with the majority view that a reasonable consumer of hand sanitizer products would not understand the phrase "kills 99.99% of germs" to mean all germs in the universe, known or unknown, and regardless of whether such germs are found on the hands.

2023 WL 2028926, at *5.

Plaintiff cites *Mier v. CVS Pharmacy, Inc.*, No. 20-cv-01979-DOC-ADS, 2021 WL 1559367 (C.D. Cal. March 22, 2021) and *Macormic v. Vi-Jon, LLC*, No. 4:20-cv-1267-HEA, 2021 WL 6119166 (E.D. Mo. Aug. 6, 2021) to support her argument that the allegations in the Second Amended Complaint satisfy the reasonable consumer standard. Those decisions, however, contradict the Ninth Circuit decision in *Moreno*.

In the cases on which Plaintiff relies, the district courts held that a reasonable consumer would interpret a 99.99% germ kill claim to apply to all germs in existence. *Mier*, at *5; *Macormic*, at *6. In *Moreno*, the Ninth Circuit remanded to give plaintiff an opportunity to limit the subset of germs to which his complaint applies, implicitly rejecting the precise theory that the *Mier* and *Macormic* courts accepted. The courts in *Piescik*, *Robles*, and *Catholdi-Jankowski* also have rejected that theory. Plaintiff's reliance on *Mier* and *Macormic* demonstrates the inadequacy of the Second Amended Complaint.

Here—as in *Moreno*—the district court recognized that a reasonable consumer would not interpret the 99.99% kill claim on the Products' label to apply to all germs in existence. The district court properly concluded "that it can only properly consider those diseases and pathogens that Plaintiff has described as diseases transmissible by hand *and* that are typically prevented by ensuring one's hands are clean." ER-127 (emphasis supplied by the court); *see also* ER-012.

That conclusion is fully supported by each of these factors: common sense; the Products' front label; the Products' back label; and the concept that a reasonable consumer would not expect the Products to perform the impossible.

**1. The Front Label Alone Sustains the District Court's Common Sense Definition of the Subset of Germs to Which the 99.99% Kill Claim Applies.**

The Products are Wet Ones® Antibacterial *Hand* Wipes. The front label says they are "HAND WIPES" and that they are "America's #1 Hand Wipe." ER-022, 023: SAC ¶¶ 24, 25; SER-270: Massa Declaration. The front label also displays an image of a hand. *Id.* Contrary to Plaintiff's argument, Opening Br. at 10, a reasonable consumer would not have to be "exceptionally acute and sophisticated" to understand that any representation about the efficacy of a hand wipe applies to its ability to kill germs commonly found on, and transmissible by, hands. Thus, in dismissing a complaint that alleged a reasonable consumer would

be deceived by a label claiming that hand sanitizer "kill[s] 99.99% of germs", the *Robles* court held:

> Robles was purchasing a product that was explicitly intended for use on the hands. In this context, it would not be reasonable to expect that she was purchasing a product that would kill germs that are transmitted through other means, or germs that are not yet known to science.

*Robles*, 2022 WL 2163846, at *6. In *Piescik*, the court *dismissed* a similar complaint, holding:

> Hand sanitizer is called hand sanitizer for a reason. Consumers purchase hand sanitizer, to, well, sanitize their hands. It defies all logic to assume that a reasonable consumer who purchases hand sanitizer will also expect it to offer protection against illnesses most commonly spread by [other means.]

576 F.Supp. 3d. at 1133.

Further, it is implausible that a significant portion of the general consuming public would rely on hand wipes to prevent diseases that are not typically prevented by keeping one's hands clean. A reasonable consumer would not use a hand wipe to prevent sexually transmitted diseases such as HPV and chlamydia or to prevent foodborne illnesses such as norovirus. A reasonable consumer would not expect the hand wipes to kill germs which are not even killed by bleach, such as cryptosporidium. A reasonable consumer, moreover, would understand that hand wipes are not meant to be used where soap and water are available.

The district court gave careful consideration to the purpose of a hand wipe product in its Order dismissing the First Amended Complaint:

There are diseases that exist that may be transmissible by hand but that would not be prevented by washing one's hands or using hand sanitizers; thus, a reasonable consumer would not purchase Wet Ones with the anticipation of preventing those diseases. Here, based on Wet Ones' representation, it can only be assumed that Wet Ones serves as an alternative to washing hands and to hand sanitizers, not for other medical treatments.

ER-0128. The court, moreover, twice emphasized the conjunctive nature of the two requirements. ER-012; ER-127 ("the Court can only properly consider those diseases and pathogens that Plaintiff has described as diseases transmissible by hand *and* that are typically prevented by ensuring one's hands are clean.") (emphasis supplied by the court).

The district court's common-sense determination that consumers use hand wipes when soap and water are not available is reinforced by guidance from the Centers for Disease Control. A website that Plaintiff provided to the district court as supplemental authority tells us that "[s]oap and water are more effective than hand sanitizer at removing certain kinds of germs like norovirus, *Cryptosporidium*, and *Clostridiodes difficile*, as well as chemicals." SER-105. Plaintiff also quoted—but did not attach—a CDC website to support the proposition that "benzalkonium chloride has less reliable activity against certain bacteria and viruses than either of the alcohols." ER-025: SAC ¶ 47. The webpage it links to, however, does not contain that statement.

The district court's decision in *Moreno*, which was not disturbed by the Ninth Circuit, also draws the common-sense conclusion that hand disinfectants cannot accomplish more than what soap and water can accomplish. The court stated that the "importance of handwashing is well known, even amongst school children." *Moreno v. Vi-Jon, LLC*, 2021 WL 807683, at *7 (S.D. Cal. 2021) *rev'd on other grounds*, 2022 WL 17668457 (9th Cir. 2022). The court concluded, therefore, that it is "widely known" that "washing hands is preferable to using hand sanitizer." *Id.*

The district court's holding, moreover, is consistent with a common sense understanding of how consumers use hand wipes. We store them in our cars and stash them in our purses, in our pockets, and in our briefcases. We don't stock them next to the sink. Instead, we understand that, when soap and water are available, they should be used. We, therefore, do not expect hand wipes to kill germs that are not controlled by washing our hands.

### 2. The Back Label is Not Misleading but Supports the District Court's Common Sense Definition of the Subset of Germs to Which the 99.99% Kill Claim Applies.

To be clear, the front label of the Product is not misleading. But Plaintiff also explicitly alleges that she relied on the back label. ER-023: SAC ¶¶ 35, 41. Though she alleges that the back label was "additionally false and misleading," *Id.*, she provides no factual support for that conclusion. The back label states:

> Wet Ones® Antibacterial Hand Wipes kill 99.99% of germs and wipe away dirt, providing a better clean than hand sanitizers. They are specially formulated to be tough on dirt and germs, yet gentle on skin, so you can confidently keep your hands fresh and clean when soap and water are not available.

*Id*. Plaintiff does not allege, for example, that the Products do not provide a better clean than hand sanitizers. On the contrary, the allegation that the back label is misleading, as to the Kill Claim, is entirely dependent upon Plaintiff's implausible conclusion that a reasonable consumer would be misled by the Kill Claim on the front label.

Plaintiff's alleged reliance on the back label, however, provides additional support for the district court's conclusion that because "the qualifying language on the back label does not contradict the front label, but rather confirms the product's proper use, both labels can be read to assess whether a reasonable consumer would be deceived by Wet Ones' advertisement." ER-012.

A product's back label "can ameliorate any tendency of the label to mislead." *Mars Petcare*, 966 F.3d at 1017 (quoting *Brady*, 26 Cal. App. 5th at 1167). If, therefore, the back label does not conflict with the front, it should be considered. *Id*.; *see also Robles*, 2022 WL 2163846, at *6 ("Product packaging should be examined as a whole because it would be unreasonable to rely on discrete statements to prove deception."). If there were "some few consumers" who did not understand that hand wipes are not meant to be used when soap and

water are available, that statement would tell them so.  *See Trader Joe's*, 4 F.4th at 881; *Ebner*, 838 F.3d at 965.

Plaintiff does not argue that the back-label statement that the Products are meant to be used "when soap and water are not available" conflicts with the front label.  Instead, she argues that whether a back label clarifies the front "cannot be determined on a motion to dismiss."  Opening Br. at 19.  The Ninth Circuit in *Mars Petcare*, however, held that a product's back label "can ameliorate any tendency of the label to mislead," came in the context of an appeal from an order granting a motion to dismiss.  The cases on which Plaintiff relies do not contradict that holding.

In *Trader Joe's Co.*, the Ninth Circuit considered the product's front and back labels in affirming an order granting defendant's motion to dismiss.  The court stated: "The context of the entire packaging is relevant."  4 F.4th at 882 (quoting *Bell*, 982 F.3d at 476).  The court also distinguished *Bell* on the grounds that the effort to "undermine the front-label claim" that was determinative there "is simply not present here."  *Trader Joe's*, 4 F.4th at 883.

*Williams* involved a product whose front label included statements and illustrations that would mislead a reasonable consumer to believe that the product contained fruits or fruit juices that it did not contain.  The Ninth Circuit held that the ingredient list contradicted the front label.  552 F.3d at 936 ("We do not think

that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations.") The court thus rejected defendant's back-label arguments, not because the case was at the pleading stage, but because "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Id*.

*Ebner* arose out of a claim that a reasonable consumer would be deceived by the product's physical configuration as to the amount of product in a tube of lip treatment. The Ninth Circuit, in affirming an order dismissing plaintiff's complaint, went beyond the product's physical configuration and concluded that, because the product's weight was accurately stated on the tube, plaintiff's claims were not plausibly alleged. The court rejected plaintiff's fine-print argument, stating that "*Williams* stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." 838 F.3d at 966 (emphasis supplied by the court).

In *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015), the Ninth Circuit rejected defendants' argument that an ingredient list that disclosed partially hydrogenated vegetable oil should be read to clarify the front label's claim that the product contained no trans-fat. The court did so not because back labels may not be considered in the context of a motion to dismiss but because the court

considered the ingredients list and concluded that "it is far from clear that typical consumers understand that a product containing partially hydrogenated vegetable oil necessarily has trans fat." 780 F.3d at 959.

The *Mier* court did not hold that back-label clarifications may not be considered in the context of a motion to dismiss. Rather, the court considered the product's back label and held that whether the specific qualification at issue there sufficiently clarified the specific front label representation was a question of fact. *Mier*, 2021 WL 1559367, at *5.

In *Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2021 WL 24842 (N.D. Cal. Jan. 4, 2021), the court acknowledged that back-label statements cannot be disregarded altogether, in the context of a motion to dismiss, but rejected defendant's back-label argument because the "disclosure of ingredients in a cleaning product" was "opaque." *Id*. at *5.

Here, the back label does not conflict with, correct any misleading statement on, undermine, or dispel the (non-existent) deception of, the front label. It is not opaque. It simply provides more detailed information about the subset of germs in existence to which the front-label claim applies. The back label would help a reasonable consumer understand that a product that is to be used "when soap and water are not available," will not protect them better than soap and water. That basic, common-sense conclusion is fundamentally different from, for example, the

conclusory argument that consumers should be presumed to understand the trans-fat content of partially hydrogenated vegetable oil.

This case, therefore, is most similar to *Catholdi-Jankowski* and *Workman v. Plum*, 141 F.Supp. 3d 1032 (N.D. Cal. 2015). In *Catholdi-Jankowski*, the court dismissed a complaint alleging that a 99.99% kill claim was misleading, after considering the entire packaging of the product. The court stated:

> A reasonable consumer would further be informed by the information contained on the hand sanitizer's rear label that the phrase "kills 99.99% of germs" does not refer to all germs, known and unknown. In particular, the qualification that the statement refers only to "many common germs that may cause illness" makes clear that the claim is limited to a subset of germs.

2023 WL 2028926, at *10. Because "there is no conflict between the statement on the front of the bottle and the additional information provided on the back" the "'label at issue here is consistent with other cases where the back label was found to elaborate on, but not contradict, the representations on the front label.'" *Id.* (quoting *Robles*, 2022 WL 2163846, at *6).

In *Workman*, plaintiff alleged that the labels on fruit purees and fruit bars were deceptive because they identified and pictured foods that were not included in the products' most prominent ingredients. 141 F.Supp. 3d at 1034. The court granted defendant's motion to dismiss, holding that "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance." *Id.* at 1035. *See also Freeman*, 68 F.3d at 290 ("Any

ambiguity that Freeman would read into any particular statement is dispelled by the promotion as a whole"); *Brown v. Kellogg Sales Co.*, 1:20-cv-7283-ALC, 2022 WL 992627, *4 (S.D.N.Y. Mar. 31, 2022) (granting motion to dismiss upon examination of the front label in context of "the entire product label"); *Puri v. Costco Wholesale Corp.*, No. 5:21-cv-01202-EJD, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) (granting motion to dismiss because a "reasonable shopper" would know that any "potential ambiguity could be resolved by the back panel of the products"); *Varela v. Wal-Mart, Inc.*, No. 20-4448-GW-KSx, 2021 WL 2172827, at *9 (C.D. Cal. May 25, 2021) (granting motion to dismiss because "a reasonable consumer who is interested in the proportions of the ingredients in the Product would be expected to look at any rear or side label on the bottle"); *Chuang v. Dr. Pepper Snapple Group, Inc.*, No. 17-01875-MWF (MRWx), 2017 WL 4286577, at *5-6 (C.D. Cal. Sept. 20, 2017) (granting motion to dismiss upon consideration of the "packaging as a whole," including the front, back, and side panels).

### 3. A Reasonable Consumer Would Not Conclude that a Product Is Capable of Performing the Impossible.

*Moore v. Trader Joe's*, involved a product that defendant marketed as "100% New Zealand Manuka Honey" or "New Zealand Manuka Honey."  The ingredient statement for all jars of the product listed Manuka honey as the sole ingredient.  In fact, the product was not honey derived 100% from the nectar of the

Manuka flower. Rather, it was honey whose "chief floral source" is the Manuka flower.

The Ninth Circuit concluded that reasonable consumers would not interpret the "100% New Zealand Manuka Honey" claim to mean that the product is derived 100% from the nectar of the Manuka flower because: "First and foremost, given the foraging nature of bees, a reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source." 4 F.4th at 883.

The *Trader Joe's* court did not impute to consumers' expertise in honey production or beekeeping. It did conclude, however, that "consumers would generally know that it is impossible to exercise complete control over where bees forage down to each specific flower or plant." 4 F.4th at 883. In the same way that a reasonable consumer of honey would generally know that a beekeeper cannot exercise minute control over which flowers bees choose to pollinate, a reasonable consumer of a hand wipe would know it is not effective against every one of the billions of types of germs on earth. Application of *Trader Joe's* leads to the conclusion that a reasonable consumer would not expect a disinfectant wipe to kill every microorganism on Earth. That would be not only impossible but potentially catastrophic. Rather, a reasonable consumer would conclude that there is a subset of all microorganisms which the Products will kill. *Robles*, 2022 WL 2163846, at

*5 ("It defies plausibility to expect that" defendant "would develop a product that would kill 99.99% of" the "between 100 billion and 1 trillion differential microbial species on Earth[.]").

### 4. Plaintiff's Effort to Distinguish *Trader Joe's* Should Be Rejected.

Plaintiff asserts that the Court should not follow *Trader Joe's* because it involved a "niche, specialty product"—not "low-priced, everyday items." Opening Br. at 23, 24; see also *Amicus* Br. at 4, n. 2. The Ninth Circuit did make that observation. It even added an anecdote from "a popular television show." 4 F.4th at 884, n.11.

The observation regarding Manuka honey's niche status, however, bore no relation to the Ninth Circuit's holding that the reasonable consumer standard requires plausible allegations that a significant portion of the consuming public would likely be deceived or that reasonable consumers do not expect the impossible. Rather, the Court stated: "Regardless, given the sheer implausibility of Plaintiffs' alleged interpretation, *a consumer of any level of sophistication* could not reasonably interpret Trader Joe's label as Plaintiffs assert." 4 F.4th at 884 (emphasis supplied). Here too, a consumer of any level of sophistication could not reasonably interpret the Kill Claim to apply to all germs on Earth or germs that persist even when keeping one's hands clean.

## B. Plaintiff Fails to Plausibly Allege Facts That Support the Allegation That the Kill Claim Violates the Reasonable Consumer Standard.

The Second Amended Complaint alleges in conclusory fashion that the Products "do not 'kill' certain microorganisms causing disease, which comprise significantly more than .01% of 'germs' found on hands." ER-022: SAC ¶ 28. Plaintiff argues, therefore, that she has "satisfied the requirements articulated by the district court," because the Second Amended Complaint "specifically alleges that the diseases referenced are transmissible by hand and comprise more than .01% of such diseases." Opening Br. at 14-15.

Plaintiff, however, does not allege—and does not claim to have alleged, even in conclusory fashion—that (1) the Products do not kill specific germs; (2) those specific germs are commonly found on, and transmissible by, hands; (3) the diseases those specific germs cause are typically prevented by keeping one's hands clean; and (4) those specific germs comprise more than .01% of all germs that are commonly found on, and transmissible by, hands and that are controlled by soap and water. Nor has Plaintiff alleged—or argued that she has alleged—that any specific germ meets each of those criteria. On the contrary, Plaintiff in her opposition to the Motion to Dismiss the Second Amended Complaint argued that she was not required to follow the district court's common sense conclusions. SER-084 (Plaintiff is not required to "explicitly state that one can prevent illness from cryptosporidium, toxoplasmosis, or HPV by washing one's hands" or to

"allege that reasonable consumers would expect to protect themselves from such outbreaks [of norovirus] even using soap and water.").

Because the district court twice provided specific directions to what Plaintiff was required to allege and Plaintiff twice failed to comply with those directions, the court properly dismissed the Second Amended Complaint.

### 1. Plaintiff's Allegations about Specific Germs Fail to Establish a Plausible Theory of Deception.

#### a. Non-enveloped viruses, certain gram negative bacteria, and spores.

The Second Amended Complaint alleges that, "[a]ccording to a table published by the Center for Food Security & Public Health regarding the antimicrobial activity of certain disinfectant chemical classes, QAC disinfectants (which includes BAC) demonstrate no activity against: (i) pseudomonads; (ii) chlamydiae; (iii) non-enveloped viruses; (iv) parvoviruses; (v) acid-fast bacteria, (vi) bacterial spores, (vii) coccidia, and (viii) prions." ER-025: SAC ¶ 48 (parentheticals omitted). The Second Amended Complaint does not allege that these germs are commonly found on hands or controlled by hand washing. HPV and chlamydia, for example, are sexually transmitted. The table on which Plaintiff relies, moreover, references studies and guidelines specific to disinfection and

sterilization in healthcare and veterinary facilities—not sources relating to hand wipes used in the consumer context.  ER-080.[3]

### b.  Norovirus.

Next, the Second Amended Complaint includes the conclusory allegation that the "Products will not kill" norovirus.  ER-026: SAC ¶ 56.  It provides no factual support for that allegation.  It does not allege that diseases caused by norovirus are transmitted from hand to hand.  It does not allege that a reasonable consumer would buy the Products in anticipation of combatting norovirus in a consumer setting.  Instead, Plaintiff alleges: "Most of these outbreaks (at restaurants and catered events) occur in food service settings like restaurants" when infected food workers touch "ready-to-eat foods, such as raw fruits and vegetables, with their bare hands before serving them."  ER-026: SAC ¶ 55.

The Second Amended Complaint also does not allege that hand washing prevents diseases that are caused by norovirus.  On the contrary, the Second Amended Complaint alleges that the "CDC recommends using bleach to kill norovirus."  ER-026: SAC ¶ 57.  It also includes an allegation comparing the

---

[3] The table in Plaintiff's Excerpts of Record can be accessed in higher resolution at https://www.cfsph.iastate.edu/pdf/antimicrobial-spectrum-of-disinfectants (last accessed February 21, 2023).

relative effectiveness—or ineffectiveness—of hand washing and hand sanitizers. ER-026: SAC ¶ 54.

### c. Human papilloma viruses.

The Second Amended Complaint alleges: "Human papilloma viruses usually are spread by direct skin contact" and "BAC is ineffective against HPV." ER-026, 027: SAC ¶¶ 59, 60. The district court, however, has correctly identified HPV as a sexually-transmitted disease. ER-145. The Second Amended Complaint does not allege that the warts caused by HPV can be prevented by washing one's hands. The Second Amended Complaint does not allege that hand washing prevents a person with an HPV wart from spreading the virus.

### d. Gram-negative bacteria

The Second Amended Complaint alleges that "BAC is substantially ineffective against gram-negative bacteria *like* P. aeruginosa." ER-027: SAC ¶ 65 (emphasis supplied). An article on which Plaintiff relies for her "hypoallergenic" claims (ER 33: SAC ¶ 108) however, states: "As a cationic detergent in the family of quaternary ammonium compounds, benzalkonium chloride (BZK) shows strong antiseptic activity against both gram-positive and -negative bacteria."[4] Plaintiff, moreover, does not allege that BAC does not kill pseudomonas aeruginosa.

---

[4] Plaintiff relies on an article published in the International Journal of Medical Sciences to support her claims related to the Hypoallergenic claim. *See* ER-033: SAC ¶ 108. Because Plaintiff has selectively quoted this study (and other sources)

The Second Amended Complaint alleges that "[p]seudomonas infection can be transmitted by hands." ER-027: SAC ¶ 64. It does not allege that pseudomonas aeruginosa is commonly found on hands. On the contrary, it alleges that pseudomonas aeruginosa causes "infections in the body following surgery." ER-027: SAC ¶ 63. The WebMD article on which Plaintiff bases her allegations regarding pseudomonas aeruginosa states that it can be found in: "Drains and plumbing parts; Household cleaning products; Hospital or clinic equipment; Water; [and] Soil" and that "it is one of the top causes of infections people get from being in hospitals." ER-027: SAC ¶ 64.[5]

The Second Amended Complaint alleges that the "best way to prevent [pseudomonas aeruginosa] infection is to wash hands often." ER-027: SAC ¶ 64. It does not allege that keeping one's hands clean prevents diseases that are caused by pseudomonas aeruginosa.

---

to support the claims in her Second Amended Complaint, Defendants request the Court incorporate the entire study (and other sources) by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 968, 1002 (9th Cir. 2018) ("The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."). The study may be accessed at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4293176/ (last accessed February 21, 2023).

[5] The article may be accessed at https://www.webmd.com/a-to-z-guides/pseudomonas-infection (last accessed February 21, 2023); *Khoja*, 899 F.3d at 1002.

### e. Mycobacteria.

The Second Amended Complaint alleges that BAC does not effectively kill mycobacteria and that "some" species of mycobacteria "can be found on and transmitted by hands." ER-027: SAC ¶ 66. It does not allege that mycobacteria are commonly found on hands. It also does not allege that washing hands with soap and water prevents the diseases that are caused by mycobacteria.

### f. Coronaviruses.

The Second Amended Complaint alleges that "the Products are ineffective at killing certain coronaviruses on human hands." ER-028: SAC ¶ 73. If Plaintiff had a basis on which to allege that the Products do not kill specific coronaviruses, she would have said so directly. She also would have alleged facts to support that conclusion. She did neither. The Second Amended Complaint, moreover, does not allege that diseases caused by coronaviruses are prevented by keeping one's hands cleans.

### g. C. difficile.

Plaintiff argues that C. difficile "is not killed by the Products." Opening Br. at 3. The Second Amended Complaint, however, does not include that allegation. Instead, it alleges that the Products are "ineffective against certain common spores that cause disease, such as C. difficile[.]" ER-028: SAC ¶ 74. It also alleges: "If someone with *C. diff* (or caring for someone with *C. diff*) doesn't clean their hands

with soap and water after using the bathroom, they can spread the germs to people and things they touch." ER-029: SAC ¶ 76. That allegation indicates that hand washing is effective not against C. difficile but against waste particles that contain the germ. The CDC webpage on which Plaintiff relies for her C. difficile allegations makes the point clear. It states: "*C. diff* germs are carried from person to person in poop." SER-212. It then emphasizes the importance of washing hands after using the bathroom. *Id.* A reasonable consumer would not use hand wipes instead of soap and water in a bathroom.

### h. Cryptosporidium

Plaintiff argues that cryptosporidium "is not killed by the Products." Opening Br. at 3; *see also* ER-028: SAC ¶ 74. The Second Amended Complaint, however, does not include that allegation. Instead, it alleges that the Products "are ineffective against certain common spores that cause disease, such as cryptosporidium." ER-028: SAC ¶ 74. It does not allege that cryptosporidium is commonly found on hands. Instead, it alleges that cryptosporidium is "commonly found in cat litter" and that it is possible for human hands to be contaminated by cryptosporidium. ER-029, 030: SAC ¶¶ 82, 86. The Second Amended Complaint does not allege that diseases caused by cryptosporidium are prevented by hand washing. On the contrary, it alleges that cryptosporidium can "survive for many

days in chlorinated water in pools and on surfaces disinfected with chlorine bleach."  ER-030: SAC ¶ 85.

> **2. The Second Amended Complaint Includes No Allegation that Would Enable a Determination of what Percentage of the Applicable Subset Is Comprised of Any Germs that the Products Do Not Kill.**

Even if Plaintiff had properly alleged that there are some germs that aren't killed by the Products that cause diseases typically prevented by keeping one's hands clean and are commonly found on hands—the numerator used to gauge the accuracy of the Kill Claim—the Second Amended Complaint includes no allegation establishing the total number of germs in the applicable subset—the denominator.  On that subject, the Second Amended Complaint alleges—at the conclusion to the section that includes the list of specific germs against which the Products are allegedly not effective: "*Accordingly*, the microbes against which the Products are ineffective, and which are transmitted by human hands, account for significantly more than .01% of 'germs' and render Defendants' Efficacy Representations false and misleading."  ER-030: SAC ¶ 87 (emphasis supplied).

That conclusory allegation would be insufficient even if Plaintiff had plausibly alleged that each of the germs identified in the complaints were commonly found on hands and controlled by soap and water.  Because at least some of the germs to which Plaintiff mentioned do not meet those requirements, an allegation setting the number of germs under consideration would be necessary,

even if conclusory allegations could suffice. The Second Amended Complaint, however, does not allege the number of the many species of germs on Earth that are commonly found on hands and controlled by soap and water and by keeping one's hands clean. Therefore, even if Plaintiff had met the requirements for some germs, the Second Amended Complaint still would not plausibly allege that they comprise more than .01% of the relevant subset.

### C. The District Court Did Not Impute to Reasonable Consumers Scientific Knowledge of Germ Properties.

Plaintiff argues: "The District Court Improperly Found that Consumers Have Knowledge of Pathogenic Disease That Cures Defendants' False Kill Representation." Opening Br. at 21. That section heading aptly summarizes her argument that the Second Amended Complaint "plausibly alleges that she and reasonable consumers were misled by Defendants' prominent, front label Kill Representation." *Id*. The argument conflates Plaintiff's obligation to allege how a reasonable consumer would interpret the Kill Claim with her obligation to allege facts in support of that interpretation.

The Second Amended Complaint alleges that the Kill Claim "could plausibly deceive reasonable consumers into believing that the Products kill 99.99% of germs from hands." ER-036: SAC ¶ 132. While that definition of the subset of germs against which reasonable consumers would expect the Products to protect them is too broad, it does not impute to consumers any scientific

knowledge.  The district court narrowed that subset to exclude germs that are not controlled by keeping one's hands clean.  In doing so, the district court no more imputed scientific knowledge to consumers than did Plaintiff when she alleged what a reasonable consumer would believe.  Rather, the district court (1) asked the un-scientific question: why would a reasonable consumer buy a product that is meant to wipe hands when soap and water are not available; and (2) answered that question—using common sense—with: a reasonable consumer would believe that the Products kill 99.99% of germs that are transmissible by hand and that are controlled by keeping one's hands clean.  ER-127, 128; ER-013.

If Plaintiff had properly alleged the reasonable-consumer interpretation of the Kill Claim, her next burden would have been to allege facts to show that the claim, as so interpreted, is false.  Plaintiff, in each of her Complaints, relied on articles supposedly written by scientists to support her allegations that the Products are not effective against some germs.  The district court thoroughly reviewed each of those allegations.  In doing so, however, the district court was not required to— and did not—conclude that a reasonable consumer would know those alleged facts.

Contrary to Plaintiff's argument, Opening Br. at 25, therefore, the district court did not determine that "reasonable consumers of Defendants' low-cost, everyday goods have specialized scientific understanding of the organisms that the

Products do and do not kill."[6]  Rather, the court drew common-sense conclusions about what reasonable consumers would expect.

## III. THE DISTRICT COURT CORRECTLY CONCLUDED THAT A REASONABLE CONSUMER WOULD INTERPRET THE "HYPOALLEGRENIC" CLAIM TO MEAN THAT THE PRODUCTS ARE LESS LIKELY THAN COMPARABLE PRODUCTS TO CAUSE ALLERGIC REACTIONS.

Plaintiff's argument that a reasonable consumer would be deceived by the Products' "hypoallergenic" claim is based on "the dictionary.com definition as: 'designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances.'"  Opening Br. at 25.  Her argument, however, ignores the comparative components of that definition: designed to reduce or minimize, relatively few; and focuses on the absolute component: no potentially irritating substances.

The district court, taking Plaintiff's full definition into account, properly concluded that the Second Amended Complaint "fails to allege facts which support that a reasonable consumer, after reading that the product is 'hypoallergenic,' would assume that Wet Ones has no potential allergens."  ER-014.  In support, the

[6] Nor does the district court's decision assume that reasonable consumers have the ability to "parse [labels] as lawyers might for ambiguities" or that they engage in "exhaustive product investigation," as the State suggests.  *See Amicus* Br. at 11, 14. It takes neither legal skill and training nor exhaustive investigation to ask the question: "why am I purchasing this product?"; or to discern the common sense answer: "to kill germs that are commonly found on hands and that are controlled by hand washing."

district court noted that the definition of "hypoallergenic" by other sources does not include language comparable to the "no potentially irritating substances" of the dictionary.com definition. ER-011. Each of those other definitions makes clear that the term is a relative one. The district court's decision is also supported by *Rugg v. Johnson & Johnson*, No. 17-cv-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018).

In *Rugg*, plaintiffs alleged that they were deceived by labeling that stated that baby products were hypoallergenic. They argued that reasonable consumers believe that a hypoallergenic product "does not contain any skin sensitizers." *Id.* at *3. The court pointed out that the *Merriam-Webster Dictionary*, the *Oxford English Dictionaries*, and *The American Heritage Dictionary* define "hypoallergenic" in relative or comparative—not absolute—terms. Therefore:

> Given these definitions, the Court finds it completely implausible that a reasonable consumer would understand the use of the term "hypoallergenic" on a product's label to mean that the product does not contain any ingredients, in any concentration, which could "sensitize" the skin, cause cancer, or have any other negative effect, regardless of whether such effect constitutes an allergic reaction.

*Id.* Plaintiff's Opening Brief makes no effort to distinguish *Rugg*.

## A. The Studies on Which Plaintiff Relies Do Not Show that the Products Are Not Hypoallergenic.

The Second Amended Complaint includes no allegation that the Products cause the same or more allergic reactions than other products that are designed to

accomplish the same purpose. It alleges instead that BAC "is an established skin irritant"; that "[a]ccording to a study, BAC was among the top 10 most frequent allergens in the standard series"; and that another "study found that 5.5% of people with contact dermatitis were sensitized to BAC." ER-033: SAC ¶¶ 105-07.

Plaintiff bases her claims regarding allergenic contact dermatitis on a Mayo Clinic study which states "BAC is increasingly associated with allergic contact dermatitis" and that BAC was among the top 10 most frequent allergens in the standard series." ER-033: SAC ¶ 106. However, the abstract to that study also states that BAC "is seldom considered to cause allergic contact dermatitis."[7] It further states that, while allergic reactions to BAC increased over the 13-year period of time over which patch testing was conducted, "[i]rritancy rates were consistently low."

Plaintiff also bases her claim on a Swiss study to support the proposition that 5.5% percent of the population is desensitized to BAC. ER-033: SAC ¶ 107. The abstract of the Swiss study is specific to the Swiss population and found variations in result even in different areas of that country.[8] It tested outpatients already "with

---

[7] The abstract of the study can be accessed at https://mayoclinic.pure.elsevier.com/en/publications/benzalkonium-chloride-a-known-irritant-and-novel-allergen (last accessed February 21, 2023); *Khoja*, 899 F.3d at 1002.

[8] The abstract of the study can be accessed at https://pubmed.ncbi.nlm.nih.gov/8088140/ (last accessed February 21, 2023); *Khoja*, 899 F.3d at 1002.

suspected allergic contact dermatitis." *Id.* It tested "common preservatives" and includes no information on the concentration of BAC used as a preservative compared to the concentration of BAC used in the Products. It also included no information on the reactions of outpatients with suspected contact dermatitis to the active ingredients in other hand wipes

Finally, Plaintiff bases her allergenic claim on a study published in the International Journal of Medical Science. ER-033: SAC ¶ 108. However, the study states in its introduction that although they are more likely to cause skin irritation than BAC, ethanol-based disinfectants "showed decreased skin irritation compared to hand washing with soap and water."[9] It therefore supports the conclusion that BAC is less likely to cause skin irritation than ethanol-based disinfectants or soap and water.

None of the studies tested the Products themselves. The Second Amended Complaint, moreover, includes no allegation about the manner in which other Product ingredients, as formulated, impact the allergenic properties of BAC. It also includes no allegation about what controls, if any, the studies used to assure that the results of their studies would predict reactions to the Products.

---

[9] The study can be accessed at
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4293176/ (last accessed February 21, 2023); *Khoja*, 899 F.3d at 1002.

The Second Amended Complaint also includes allegations that some of the Products' inactive ingredients can cause allergic reactions under certain circumstances. ER-033, 034: SAC ¶¶ 110-17. It does not allege that any of those ingredients are as likely or more likely to cause allergic reactions than the inactive ingredients in other hand wipes. Nor does it allege that the inactive ingredients, as formulated in the Products, can cause, have caused, or will cause allergic reactions.

Plaintiff's allegations regarding the Products' inactive ingredients, therefore, would be insufficient even if a plausible claim that the Hypoallergenic Claim is misleading could be stated solely though allegations pertaining to the ingredients, as opposed to the Products themselves. *See Hawkins v. Coca Cola Co.*, No. 21-cv-8788 (KMK), 2023 WL 1821944, at *7 (S.D.N.Y Feb. 7, 2023) (allegations based on "amorphous 'laboratory analysis'" concluding that product represented to have "100% Natural Flavors" contained artificial ingredient "are conclusory statements that the Court is not required to accept[.]").

The State argues that reasonable consumers might "interpret 'hypoallergenic' to mean that the products have relatively few allergens." *Amicus* Br. at 25. That argument is consistent with the district court's common sense interpretation. The Second Amended Complaint, however, does not allege that the Products contain the same or more skin irritants than other products that are designed to accomplish the same purpose. Nor does the Second Amended

Complaint allege whether any of those other products were included in the alleged studies on which Plaintiff relies.

**B. The Cases on Which Plaintiff Relies Do Not Support Her Hypoallergenic Claim.**

Plaintiff argues that *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031 (N.D. Cal. 2018) and *Sebastian v. Kimberly-Clark Corp.*, No. 17-cv-442-WQH-JMA, 2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) support her hypoallergenic claim. They do not.

In *Kellman*, the court made clear that "plaintiffs are not alleging that a product must contain no skin sensitizers or never cause an allergic response to be hypoallergenic." 313 F. Supp. 3d at 1050. Rather, the *Kellman* plaintiffs alleged that "a substantial number of people who use [defendants'] product[s] will suffer allergic reactions." *Id.* at 1051. The *Rugg* court, therefore, distinguished *Kellman*, stating: "The operative pleading in *Kellman* alleged facts not asserted in the present case, for example, that the named plaintiffs had suffered skin irritation, eye irritation, dermatitis, and allergic skin reactions." *Rugg*, 2018 WL 3023493, at *4.

Here, while Plaintiff has alleged that the Products contain skin irritants, she has not alleged that they have caused or will cause allergic reactions in a substantial number of people. Rather—as the district court accurately observed— she has alleged (inaccurately) that studies have shown that certain chemical components of the Products may cause a reaction in some people. Further, using

the definitions referenced above, a product is not hypoallergenic if it causes allergic reactions in a substantial number of people, unless it causes the same or more allergic reactions than comparable products. In *Kellman*, however, defendants conceded that whether a substantial number of people will suffer allergies "is what customers think about." *Id*.

In *Sebastian,* Defendant marketed the baby-care products as "comprised of 'gentle *ingredients*' for 'sensitive skin.'" 2017 WL 6497675, at *1 (emphasis supplied). The court held that plaintiffs' allegations that the products contained "harmful and/or potentially toxic ingredients" were sufficient to state a claim. *Id*. at *5. Here, the Products' labels include no reference to the skin sensitization properties of individual ingredients. In *Sebastian*, moreover, the products' labels represented that they were "natural" and "made with a 'simple formula'" and plaintiffs alleged that products "actually contain non-natural, synthetic, and/or artificial ingredients, including phenoxyethanol, caprylyl glycol, cocamidopropyl betaine, and sodium citrate" and other "harmful and/or potentially toxic ingredients." *Id*. at *1-2. The decision includes no analysis of how a reasonable consumer would interpret the term "hypoallergenic" had it been used separately from the representation that the products were "natural" and "made with a 'simple formula." Nor is there any indication that the court construed "hypoallergenic" to mean containing no potential allergens.

Here, Plaintiff does not allege that the Products are represented to be "free from harmful and/or potentially toxic ingredients." They are represented to be "hypoallergenic"—that is, comparatively less likely to cause allergic reactions than similar products. The Second Amended Complaint does not allege that the Products fail to meet that definition.

## CONCLUSION

The Court should affirm the order of the district court dismissing Plaintiff's Second Amended Complaint.

Date: February 22, 2023

Respectfully submitted,

s/ *Megan McCurdy*

Stinson LLP
John W. Moticka
7700 Forsyth Boulevard, Ste. 1100
St. Louis, Missouri 63105
Telephone: 314.259.4562
john.moticka@stinson.com

Megan McCurdy
J. Emmett Logan
1201 Walnut Street, Ste. 2900
Kansas City, MO 64106
megan.mccurdy@stinson.com
emmett.logan@stinson.com

*Attorneys for Appellees Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, and Edgewell Personal Care, LLC*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**


**9th Cir. Case Number(s)**   22-55898 _____

The undersigned attorney or self-represented party states the following:

[  ] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[X] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

*Krista Robles v. GoJo Industries, Inc. d/b/a Purell*, Case No. 22-55627

The issues presented in the aforementioned matter raise similar issues concerning the application of the reasonable consumer standard to consumer protection claims stated against the manufacturer of a hand-sanitizing product that claims to kill 99.99% of germs.


**Signature**   *s/Megan McCurdy*_____ **Date** ____February 22, 2023_____

1

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**   22-55898

I am the attorney or self-represented party.

**This brief contains 11951 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**      *s/Megan McCurdy*            **Date**      February 22, 2023